IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LEVERT SMITH and NELSON RADFORD,
Co-Administrators of the Estate of
Joseph Jeremaine Porter,

                Plaintiffs,

v.                                CIVIL ACTION NO. 3:10-0781

RONALD LUSK, individually, and
THE CITY OF HUNTINGTON,
WEST VIRGINIA,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendants' Motion to Admit the Audio and Video Statement of Lamont Miller (ECF No. 162). Supplemental briefing on this motion was ordered on March 1, 2012 (ECF No. 257), and is now complete. As ordered in this Court's May 14, 2012, Order (ECF No.307 ), and for the following reasons, the Motion is **DENIED**.

**I.**

The instant action was brought by the administrators of the estate of Joseph Porter, alleging that Officer Ronald Lusk of the Huntington Police Department unreasonably shot Porter in the course of responding to reports of gunfire at Club Babylon in Huntington, West Virginia. According to Lusk, officers entered through the front door of the club as Porter tried to leave through the back door. As officers approached Porter, he turned toward Lusk, gun in hand. Lusk fired his own gun at Porter one time, striking him in the arm and chest. Porter died of these wounds. The facts of this case are recited more fully in previous orders. *See, e.g.*, ECF No. 255.

Lamont Miller was a close associate of Joe Porter, and was in Porter's immediate vicinity when he was shot. In March 2011, Miller was indicted in the Southern District of West Virginia on firearm and drug distribution charges unrelated to the Babylon shooting. *See* Case Nos. 3:11-cr-062, 3:11-cr-192. These charges stemmed from Miller's summer 2010 dealings in drugs and guns at a Bureau of Alcohol, Tobacco, and Firearms ("ATF") pawn shop sting operation, "Smokin' Aces." As part of that operation, audio and video recordings were taken of Miller's conversation with an undercover ATF agent on June 23, 2010. In that conversation, Miller says that he once had a Kimber-brand firearm, but that his cousin[1] Joe Porter got caught with it the night he was shot by police at Club Babylon:

| | |
|---|---|
| Miller: | I had a 40 style Kimber with a built in thing on it. |
| Agent: | You got a fucking Kimber? |
| Miller: | No, I had one |
| Agent: | That's the shit there |
| Miller: | Did you see the news about the cops killing my cousin? |
| Agent: | Uh-uh |
| Miller: | You know that guy that got killed at Club Babylon, in the club, that was my cousin or whatever, he got caught with it or whatever, you know what I'm sayin'? |
| Agent: | He got caught with your gun? |
| Miller: | Yeah, I mean, but that was my cousin, you know what I'm saying, so I don't really give a fuck, you know what I'm saying. It was one of my close cousins, you know what I'm saying. |

*See* ECF No. 162, Ex. A, at 5:15.

Since his 2011 indictment, Miller has refused to answer questions about his transactions at Smokin' Aces, invoking his Fifth Amendment privilege against self incrimination. Defendants now seek to introduce the audio and video recording of Miller's statement at Smokin' Aces as a statement against his penal interest under Fed. R. Evid. 804(b)(3).

---

[1] Miller and Porter were not biological cousins.

**II.**

Miller's statement is hearsay, an out-of-court statement offered to prove the truth of the matter asserted: here, that Joe Porter had a gun with him the night he was shot. Fed. R. Evid. 801(c). Under the Federal Rules of Evidence, hearsay is generally inadmissible, Fed. R. Evid. 802, because it is "subject to particular hazards" not present in testimony. *Williamson v. United States*, 512 U.S. 594, 598 (1994). These include "the dangers of insincerity, ambiguity, erroneous perception, and faulty memory," *United States v. Udeozor*, 515 F.3d 260, 267 (4th Cir. 2008), and, "most importantly," interference with "the right of the opponent to cross-examine." *Williamson*, 512 U.S. at 598. However, "the Federal Rules of Evidence also recognize that some kinds of out-of-court statements are less subject to these hearsay dangers." *Id.* One of these exceptions, Fed. R. Evid. 804(b)(3), provides that a hearsay statement is "not excluded by the rule against hearsay if the declarant is unavailable as a witness . . . [and if it is] a statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to civil or criminal liability[.]" Fed. R. Evid. 804(b)(3); *Williamson*, 512 U.S. at 600.[2] Where the statement tends to expose a declarant to criminal liability, it is commonly termed a statement "against penal interest." *See, e.g.*, *Williamson*, 512 U.S. at 603. The party seeking to introduce the a statement under Rule 804(b)(3) has the "formidable burden" of establishing the prerequisites for admissibility. *United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir.1995).

---

[2] Before the 2010 revision to the Rules, the relevant portion of Fed. R. Evid. 804(b) read "a statement which at the time of its making . . . so far tended to subject the declarant to civil or criminal liability. . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." The advisory committee notes make clear that the changes producing the current version of this language were "stylistic only." Fed. R. Evid. 804, Advisory Committee's Note.

In this case, Miller is unavailable, having invoked his Fifth Amendment privilege not to testify about his interactions at Smokin' Aces. Where a declarant is unavailable, and a party seeks to admit his statement as against his penal interest under Rule 804(b)(3), the "sole question under Rule 804(b)(3)" is whether the declarant's statements, at the time they were made, exposed the declarant to criminal liability such that a reasonable person in his or her shoes would not have made the statements unless believing them to be true. *United States v. Jordan*, 509 F.3d 191, 202 (4th Cir. 2007). The extent to which a statement must expose a declarant to criminal liability in order to qualify for admission under Rule 804(b)(3) is context-specific, and therefore determined on a case-by-case basis. *Williamson*, 512 U.S. at 603.

The language of Rule 804(b)(3) and the body of case law guiding its interpretation provide some parameters for this determination. First, it is clear that a statement need not be an explicit confession of criminal guilt to qualify for Rule 804(b)(3) admission. *Williamson v. United States*, 512 U.S. at 603 ("[e]ven statements that are on their face neutral may actually be against the declarant's interest."). The statement only need have "so great a *tendency*" to subject an individual to criminal liability that a reasonable person would only say it if true. Fed. R. Evid. 804(b)(3); *see also United States v. Lang*, 589 F.2d 92, 97 (2d Cir.1978) ("The Rule does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution."); *United States v. Benveniste*, 564 F.2d 335, 341 (9th Cir. 1977) ("We do not believe, however, that rule 804(b)(3) was intended to apply only to statements which amount to direct confessions of criminal responsibility. Otherwise Congress would not have used the broadly worded phrase 'tended to subject.'"). At the same time, the Rule 804(b)(3) exception is limited. The language of the rule indicates that the statement must have sufficient tendency to expose the declarant to criminal punishment that the possibility of penal liability would hold some influence over a reasonable person's behavior. The rule specifies that the statement must have "so great" a

tendency to subject the declarant to penal liability—not just *any* tendency to support penal liability.[3] As the Seventh Circuit has explained, this hearsay exception does not provide that any statement which "possibly could" or "maybe might" lead to criminal liability on the part of the declarant is admissible; on the contrary, only those statements that "so far tend to subject" the declarant to criminal liability, such that "a reasonable person would not have made it unless it were true" are admissible. *United States v. Butler*, 71 F.3d 243, 253 (7th Cir. 1995). Defendants argue for a more lenient interpretation of admissibility under 804(b)(3), citing the Second Circuit case *United States v. Garris*, 616 F.2d 626, 630 (2d Cir. 1980), for the proposition that a statement need only be "probative in a trial against the declarant" to be admitted under Rule 804(b)(3). However, Defendants misread *Garris* to stand for the proposition that any fact with any probative value in a trial should be admitted under Rule 804(b)(3). Instead, *Garris* simply holds that inculpatory statements need not be direct confessions of criminal acts to be admissible—as later reiterated in *Williamson*. *Williamson*, 512 U.S. at 603.

Although statements need not be direct confessions to qualify for Rule 804(b)(3) admission, they must be substantially inculpatory. Hypothetical, attenuated, or improbable bases for criminal liability are not grounds for admission under 804(b)(3). *See Williamson*, 512 U.S. at 603-04 ([t]he question under Rule 804(b)(3) is always whether the statement was *sufficiently* against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'") (emphasis added); *see also United States v. Bonty*, 383 F.3d 575, 579 (7th Cir. 2004) ("It is simply not enough that [the declarant] admitted to some facts

---

[3] As noted above, the language of Fed. R. Evid. 804(b)(3) regarding statements against penal interest was changed in 2010 for stylistic reasons. The Court notes that both the earlier and current versions of 804(b)(3) specify that the statement have more than a slight tendency to subject the declarant to punishment. The pre-2010 version uses the language "so far tended to subject" and the current version "so great a tendency."

... that 'possibly could' lead to criminal liability; to be inculpatory he must admit to criminal behavior."); *United States v. Maliszewski*, 161 F.3d 992, 1009 (6th Cir. 1998) ("from the perspective of the average, reasonable person, the statement must have been *truly averse* to the declarant's penal interest, considering when it was made") (emphasis added); *United States v. Butler*, 71 F.3d 243, 253 (7th Cir. 1995) ("The hearsay exception does not provide that any statement which 'possibly could' or 'maybe might' lead to criminal liability is admissible."); *United States v. Monaco*, 735 F.2d 1173, 1176 (9th Cir. 1984) ("Rule 804(b)(3) is not limited to confessions of criminal responsibility, although the statements must, *in a real and tangible way*, subject the declarant to criminal liability. A showing that the statements *solidly inculpate* the declarant is required.") (emphasis added); *see also United States v. Bonds*, 2009 WL 416445 at (N.D. Cal. 2009) (movant's "attenuated theory of liability" not sufficient to support admission as statement against penal interest). Additionally, the Advisory Committee notes to Rule 804(b)(3) show that the Committee considered, and rejected, a proposal to broaden the statements against interest exception to include statements against a declarant's social or reputational interests, concluding that such statements lacked sufficient guarantees of reliability. Fed. R. Evid. Advisory Committee's Note, 1974 Enactment. Therefore, the Court concludes that the statement against penal interest exception is a limited exception, and that a statement is not admissible if it merely subjects the declarant to a criminal reputation, or to a remote possibility of prosecution. Rather, to be admissible, a statement must subject the declarant to some real and tangible threat of criminal prosecution.

### III.

At issue in this case is whether Miller's statements were sufficiently against his penal interest to be admitted under Rule 804(b)(3). Defendants argue that Miller's statements were inculpatory in that they would aid in his prosecution for four separate crimes; additionally, they argue that because Miller invoked his Fifth Amendment right not to testify about the statement, the statement

must be inculpatory. Plaintiffs maintain that all of the asserted bases for liability are too attenuated to support admission under Rule 804(b)(3). Addressing Defendants' proposed bases for liability in turn, the Court concludes that none are sufficient to support admission of Miller's statement.

First, the Court notes the general nature of the conversation: although it was between Miller and an ATF agent at Smokin' Aces, where Miller is charged with having later conducted many illegal firearms transactions, nothing in the statement was clearly inculpatory. The audible portions of the recording surrounding the statement Defendants seek to admit make clear that Miller and the agent were simply talking about their interest in guns, not about any transaction in firearms. It is also evident that Miller is unaware that he is talking to law enforcement agents, and is not, therefore, intending to confess to any crimes.[4]

Defendants submit that the statement has a tendency to subject Miller to prosecution for several different crimes. First, because Joe Porter was convicted of a felony in August 2009, Miller could be prosecuted under 18 U.S.C. § 922(d)(1), which makes it illegal to sell or dispose of a firearm to a person, knowing or having reasonable belief that the person has been convicted of a felony. Second, because Miller had been charged with felony malicious wounding by state criminal complaint in July 2009, he could be prosecuted under 18 U.S.C. § 922(n) for receiving weapons while under state indictment or information for a felony.[5] Both of these theories of liability are too

---

[4] A declarant need not be aware that an individual is a law enforcement officer for 804(b)(3) "against interest" requirement to attach; a statement may qualify under 804(b)(3) when made to individuals who are not law enforcement officers. *See Williamson*, 512 U.S. at 602 (citing Fed. R. Evid. 804(b)(3) Advisory Committee's Note); *see also United States v. Jordan*, 509 F.3d 191, 203 (4th Cir. 2007) (statement made to friend admissible). In this case, however, the fact that Miller was unaware that the pawn shop employee was an ATF agent negates any chance he meant to confess some kind of criminal involvement to the officer.

[5] The Court assumes without deciding that the felony charge against Miller would count as an indictment for § 922(n) purposes despite being a different means of charging. *See, e.g.*, *United States v. Brede*, 477 F.3d 642, 643-44 (9th Cir. 2007).

attenuated. There is no evidence that Miller actively "transferred" the gun to Porter, that any such transfer happened following Porter's indictment or conviction, or that Miller made any such transfer after he was charged with a felony.

Next, Defendants argue that the statement subjects Miller to liability for a state obstruction charge under W. Va. Code § 61-5-17(c), because, when interviewed by police immediately after Porter was shot, Miller denied being around guns, or having a gun, in the 24 hours before the shooting. Nothing in the Smokin' Aces statement directly contradicts these statements, much less comes close to implicating Miller under § 61-5-17(c), which criminalizes only those false statements made to officers conducting a felony investigation which are made "knowingly and willfully," and with "intent" to obstruct the investigation. W. Va. Code § 61-5-17(c).

Last, Defendants assert that Miller's statement that he once had a Kimber gun, which someone else later possessed, would be probative in a prosecution under 18 U.S.C. § 922(a)(1) for acting as an unlicensed dealer in firearms. According to Defendants, Miller's statement about the Kimber showed a "willingness on defendant's part to deal [in firearms], a profit motive, and a greater degree of activity than occasional sales by a hobbyist." Defs.' Supp. Mem., ECF No. 262 at 5 (quoting *United States v. Huffman*, 518 F.2d 80, 81 (4th Cir. 1979)). As with the other bases for liability, Miller's statement is at most tangentially related to the required elements of the crime. The statement that he once had one gun that came into the possession of another could have some relevance to a charge under § 922(a)(1), but is so minimal that it cannot give rise to a fair inference of "dealing," "profit motive," or a significant "degree of activity" in sales of firearms. *See Huffman*, 518 F.2d at 81. As with the other proposed bases for criminal liability, Miller's exposure to a § 922(a)(1) charge was not sufficient to produce the guarantee of reliability justifying Rule 804(b)(3) admission.

Additionally, Defendants argue that Miller's decision to invoke his Fifth Amendment right against self-incrimination confirms that his statement was against his penal interest. Although courts have considered the decision to invoke the Fifth Amendment as a factor in determining whether a statement is against a declarant's penal interest, *see, e.g.*, *United States v. Beneviste*, 564 F.2d 335, 341 (9th Cir. 1977), in this case, Miler has invoked the Fifth Amendment as to all his interactions at Smokin' Aces. As he faces criminal charges related to numerous firearms transactions at Smokin' Aces, refusal to testify regarding this particular interaction is not particularly telling. Further, even if Miller is now cognizant of penal liability attending the June 23 statement, such a consideration is not part of the analysis under Rule 804(b)(3): the rule considers only the criminal liability of which a reasonable person would have been aware *at the time the statement was made*. Fed. R. Evid. 804(b)(3) (emphasis added). Therefore, Miller's decision to invoke his right not to testify about the statement several years after it was made, while under indictment for several felonies, is not a good gauge of his mindset at the time of the statement.

In sum, under none of the proposed bases for liability did Miller's statement have "so great a tendency" to subject him to criminal liability that a reasonable person would not have made it if untrue. Fed. R. Evid. 804(b)(3). The rationale behind Rule 804(b)(3) also supports this result. Rule 804(b)(3) excepts statements against interest from the general bar against hearsay evidence based on the "circumstantial guarantee of reliability" provided by the assumption that people do not make damaging statements unless true. Fed. R. Evid. 804 Advisory Committee Note, 1972 Enactment. Here, not only is Miller's statement insufficiently contrary to declarant's penal interests to satisfy the Rule, it plainly lacks any other circumstantial guarantee of reliability. It was made during a casual conversation about firearms, and contains no reference to buying or selling guns. The statement is vague, and fails to provide a number of key details, such as how Joe Porter got the Kimber, how long he had it, whether Lamont Miller gave it to him, and whether Miller knew from

a source other than news or investigative reports that Porter had the gun with him at Club Babylon. As such, the statement is vague, confusing, potentially misleading, and not particularly probative of the facts at issue in this case. The ambiguity of Miller's statement is particularly harmful because he is unavailable, so the statement cannot be clarified or pinned down through cross-examination. Under these circumstances, even if it were admissible under Rule 804(b)(3), the statement would likely be excluded under Fed. R. Evid. 403. The statement is ambiguous and does not sufficiently implicate the declarant's penal interest to qualify for admission under Rule 804(b)(3). Defendants' Motion is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 17, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE